**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAFETY RESEARCH & STRATEGIES, INC.,** | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 12-0551 (ESH) |
| **U.S. DEPARTMENT OF TRANSPORTATION,** | ) | |
| Defendant. | ) | |

## PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons set forth in the accompanying memorandum of points and authorities, plaintiff Safety Research & Strategies, Inc. respectfully moves for partial summary judgment and seeks entry of an order requiring defendant U.S. Department of Transportation and its component, the National Highway Traffic Safety Administration, to disclose agency records improperly withheld under the Freedom of Information Act, 5 U.S.C. § 552.

Respectfully submitted,

***/s/ David L. Sobel***

DAVID L. SOBEL
D.C. Bar No. 360418
1818 N Street, N.W., Suite 410
Washington, DC 20036
(202) 246-6180

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAFETY RESEARCH & STRATEGIES, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF TRANSPORTATION,**<br><br>Defendant. | ) | C.A. No. 12-0551 (ESH) |

# MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff Safety Research & Strategies, Inc. ("SRS") seeks disclosure of agency records from defendant U.S. Department of Transportation and its component, the National Highway Traffic Safety Administration ("NHTSA"). Specifically, SRS seeks the public release of information relating to the 2008 recall of the Evenflo Discovery child restraint seat. The agency has moved for summary judgment, asserting that responsive material has properly been withheld under FOIA Exemptions 4 and 5, and that it has conducted an adequate search for material responsive to SRS's request. SRS does not contest NHTSA's invocation of Exemptions 4 and 5, but does challenge the adequacy of the agency's search. As such, SRS opposes the agency's motion with respect to the search issue, and cross-moves for partial summary judgment.

## Factual Background

Between August 29, 2007 and September 5, 2007, NHTSA's New Car Assessment Program ("NCAP") conducted four side-impact tests on vehicles and placed the Evenflo Discovery child restraint seat in the test vehicles in order to collect data on the effects of side

impacts on the seats. Declaration of John Abbott ("Abbott Decl.") (filed with agency's motion), ¶5. During the tests, the Evenflo Discovery seat became detached from its base. After the tests, NHTSA's NCAP Division contacted its Office of Defects Investigation ("ODI"). *Id.* ODI did not open an investigation of the Evenflo child seat. Instead, ODI contacted Evenflo Company, Inc. with regard to the performance of the Discovery seat in the NCAP tests. *Id.*, ¶6.

In late 2007, representatives from Evenflo met with NHTSA twice to review the NCAP testing, including the performance of the Discovery seat in the NCAP tests. This included watching the crash test video. Between December 2007 and January 2008, Evenflo observed two follow-up side-impact tests conducted by NHTSA. *Id.*, ¶7. On January 31, 2008, Evenflo recalled the Evenflo Discovery seats, identified by NHTSA as Recall No. 08C002000. *Id.*

By letter to NHTSA dated November 22, 2011, SRS submitted a FOIA request seeking agency records relating to Recall No. 08C002000, involving Evenflo Discovery car seats models 390, 391, 534 and 552, and associated travel systems. Specifically, SRS requested the following records:

> 1) copies of any and all of NHTSA's correspondence, manufacturer responses, additional correspondence or submissions, including but not limited to electronic indices or attachments involving Recall 08C002000, Evenflo Discovery car seats models 390, 391, 534 and 552, and associated travel systems;
>
> 2) copies of the laboratory test reports and videos conducted by NHTSA that led to the recall of the Discovery car seats, models 390, 391, 534 and 552;
>
> 3) all correspondence and other documentation, including, but not limited to meeting minutes and agendas, electronic communications from NHTSA to Evenflo concerning these tests and their outcomes; and
>
> 4) Evenflo's chronology "of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with their dates of receipt," associated with Recall 08C002000, as required under 49 C.F.R. Part 573 ("defect and noncompliance information report").

Exhibit A, attached to Declaration of Andrew DiMarsico ("DiMarsico Decl.") (filed with agency's motion).

By letter to SRS dated January 6, 2012, NHTSA responded to the FOIA request. NHTSA stated that "[i]n response to item 1," it had "identified 16 pictures, 9 videos and 158 pages of records responsive to" SRS's request. NHTSA released "16 pictures and 54 pages of records responsive" to the request and directed SRS to the agency's website for access to the videos identified as responsive. NHTSA further stated that it was "withholding 104 pages of records because they contain information related to trade secrets and commercial or financial information." NHTSA further stated that "We have no records responsive to item 2 or 3 of your request." NHTSA advised SRS of its right to appeal the agency's initial determination. Exhibit D, attached to DiMarsico Decl.[1]

By letter to NHTSA's Chief Counsel dated January 12, 2012, SRS appealed the agency's denial of its FOIA request. SRS stated, *inter alia*, that "it cannot be possible that there are no records responsive to item 2" of SRS's FOIA request. Exhibit E, attached to DiMarsico Decl. By letter dated February 14, 2012, NHTSA's Chief Counsel responded to SRS's administrative appeal. He stated, *inter alia*:

> In regard to Item 2 of your original request, you allege that responsive documents, such as memoranda or communications regarding press releases, "must" exist. . . . I have determined that responsive records may exist elsewhere in NHTSA's files. Therefore, effective today, I am remanding your FOIA request for a new search within the Agency and reprocessing. The Agency will treat your appeal as to Item 2 as an initial request and will process it in accordance with applicable timelines as if it had been received by the Agency today.

[1] The FOIA request SRS submitted to NHTSA did not assign numbers to the categories of material being requested. As such, the agency's references to "item[s]" 1, 2 and 3, were arbitrary and somewhat misleading and ignored the fact that SRS was seeking disclosure of "copies of *any and all* of NHTSA's correspondence, manufacturer responses, additional correspondence or submissions" relating to the car seat recall. Exhibit A, attached to DiMarsico Decl. (emphasis added).

Exhibit F, attached to DiMarsico Decl.

Upon NHTSA's failure to timely respond to the "remand[ed]" FOIA request, SRS initiated this action on April 10, 2012. Dkt. No. 1. Subsequently, by letter dated April 26, 2012, NHTSA advised SRS that additional material had been located as a result of the agency's second search, some of which was being withheld under FOIA Exemptions 4 and 5. Exhibit H, attached to DiMarsico Decl. Notably, in both of its responses to SRS's FOIA request, the agency failed to account for any communications between NHTSA and Evenflo concerning the Discovery child restraint seats.

## ARGUMENT

The Freedom of Information Act safeguards American citizens' right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

Disputes involving the propriety of agency determinations are commonly resolved at the summary judgment stage in FOIA cases. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011); *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In FOIA cases, the Court reviews the government's action *de novo*, and the government bears the burden of proof. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA

expressly places the burden 'on the agency to sustain its action.'" *Id*. (quoting 5 U.S.C. § 552(a)(4)(B)). "[T]he underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (citation and internal quotation marks omitted).

"A party is entitled to summary judgment if the [record] demonstrate[s] that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law." *Goodrich v. Teets*, 510 F. Supp. 2d 130 (D.D.C. 2007); *see also* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In FOIA cases, to be entitled to summary judgment, an agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

Where, as here, the requester challenges the adequacy of the agency's search for responsive records, in order to prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotations and citations omitted). An agency must demonstrate that it searched for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

In response to the agency's showing, a "plaintiff may . . . provide 'countervailing evidence' as to the adequacy of the agency's search." *Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (quoting *Founding Church of Scientology of*

*Washington, D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979)). If the plaintiff provides "sufficient evidence to raise 'substantial doubt' concerning the adequacy of [the agency's] search," particularly when there is a '"well defined request[] and positive indications of overlooked materials,' summary judgment is inappropriate." *Id.* at 314 (quoting *Valencia-Lucena*, 180 F.3d at 326); *see also Concepcion v. U.S. Customs & Border Prot.*, 767 F. Supp. 2d 141, 145-146 (D.D.C. 2011).

Here, the agency is not entitled to summary judgment because it has failed to demonstrate that it conducted an adequate search for responsive records. Specifically, the agency's failure to identify *any* correspondence between NHTSA and Evenflo in response to SRS's FOIA request raises "substantial doubt" that the search was "reasonably calculated to uncover all relevant documents." For the reasons set forth below, the agency's motion should be denied and SRS's cross-motion should be granted.

## I. The Agency Has Failed to Demonstrate That it Conducted a Reasonable Search for Responsive Records

"The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology," and if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citations and internal quotation marks omitted). In this case, the agency's search is suspect for two distinct reasons: 1) NHTSA's declarations do not contain the requisite specificity with respect to the search; and 2) there are "positive indications of overlooked material."

### A. NHTSA Has Not Adequately Described its Search

The agency pays lip service to the requirement that, in order to prevail, its declarations must show "that the search method was reasonably calculated to uncover all relevant documents"

and "explain how the search was conducted." Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Def. Mem.") at 7, quoting *Oglesby*, 920 F.2d at 68. A review of NHTSA's declarations, however, demonstrates that the agency has fallen far short of the required showing. Mr. Abbott, the employee whose efforts NHTSA points to as an "example" of the search methodology employed, Def. Mem. at 8, describes those efforts as follows:

> To locate all potentially responsive information . . . , I searched my files for all records that related to NHTSA NCAP tests that lead Evenflo to recall child seats covered by NHTSA Recall No. 0800200. Specifically, I searched my paper files, my agency-assigned e-mail account (including the Inbox, Sent, Delete and Archive folders), the network storage drive assigned to me by the agency, the network storage drives to which I have access, and the storage drive (i.e., "C:\" drive or hard drive) on my agency-assigned laptop. . . .
>
> In response to the second search request, I searched my files for all records that related to NHTSA's tests that lead Evenflo, to recall child seats covered by NHTSA Recall No. 0800200. Specifically, I searched my paper files, my agency-assigned e-mail account (including the Inbox, Sent, Delete and Archive folders), the network storage drive assigned to me by the agency, the network storage drives to which I have access, and the storage drive (i.e., "C:\" drive or hard drive) on my agency-assigned laptop.

Abbott Decl., ¶¶ 11, 14.[2]

As an initial matter, SRS notes that Mr. Abbott does not even attempt to distinguish the initial search he conducted from "the second search request," which resulted from the determination of NHTSA's Chief Counsel (upon SRS's appeal) that "responsive records may exist elsewhere in NHTSA's files." Exhibit F, attached to DiMarsico Decl. Indeed, the record is devoid of any assertion that the second search – conducted after SRS demonstrated through its

[2] The agency's other declarant, Mr. DiMarsico, has no direct knowledge of the search methodology employed in this case. He states only that "[t]he FOIA Specialist instructed the identified personnel to search their paper files, electronic files, and e-mail correspondence for communications with Evenflo Company, Inc. that related to the FOIA request." DiMarsico Decl., ¶ 19; *see also id.*,¶ 29 (same).

administrative appeal that the first search was deficient – differed in any material respect from the initial search. Mr. Abbott's descriptions of the two searches are identical.[3]

The lack of any distinction between the two searches aside, the agency's showing is plainly inadequate to establish that its search efforts were reasonable. While Mr. Abbott identifies the *places* he searched, he provides absolutely no indication of the *substance* of what he was seeking, other than the vague and subjective assertion that he searched for records that related to "tests that lead Evenflo to recall child seats covered by [the recall]." Recognizing that such vague representations do not aid the court in conducting a *de novo* review of an agency's search efforts, the D.C. Circuit has long required agency declarations to identify the specific "search terms" employed by agency personnel conducting search for responsive records. *See Oglesby*, 920 F.2d at 68 ("A reasonably detailed affidavit, *setting forth the search terms and the type of search performed*, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.") (emphasis added). *See also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011); *Valencia-Lucena*, 180 F.3d at 326; *Nation Magazine*, 71 F.3d at 890.

This Court recently found agency representations similar to those at issue here deficient. In *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 2012 U.S. Dist. LEXIS 59501 (D.D.C. April

3 Despite the determination of the agency's Chief Counsel that "responsive records may exist *elsewhere* in NHTSA's files," the agency's FOIA specialist inexplicably "contacted the agency personnel *who had previously been identified* as likely to have responsive records" and instructed them to conduct new searches. DiMarsico Decl., ¶ 29 (emphasis added). The agency offers no explanation as to why it expected the results of the second search to differ from those of the first. It does, however, tout the apparently repetitive efforts as somehow indicative of an adequate search, noting that "[o]n two separate occasions, Mr. Abbott thoroughly searched his files for records related to the Evenflo matter." Def. Mem. at 8 (citation omitted).

30, 2012), the agency declaration "omit[ted] necessary details regarding the searches of several component offices," including "the search terms used by [several] offices" and "how the search was conducted." The Court held that "[u]nder the law of this Circuit, the omission of such information from the agency declarations precludes the entry of summary judgment in the [agency's] favor." *Id*. at *19-20 (footnote and citations omitted). *See also Friends of Blackwater v. U.S. Dep't of the Interior*, 391 F. Supp. 2d 115, 119-121 (D.D.C. 2005) ("Without evidence in the agency's affidavit of the specific search terms used to carry out the search, . . . the Court finds that the agency's search . . . was inadequate.").

Indeed, the lack of search terms and a description of "how the search was conducted" makes it impossible for SRS or the Court to assess the adequacy of the agency's efforts. For example, in a case such as this where the existence and location of certain communications is at issue, an automated search of e-mail message headers for the term "evenflo.com" would be reasonable, and indeed, vital to locating responsive records. Yet the record's meager description of the agency's search efforts makes it impossible to determination whether even such a common-sense search method was employed here.[4]

Having utterly failed to describe its search methodology, the agency attempts to explain the absence of communications between NHTSA and Evenflo by suggesting that "potential e-mail messages *may have been* deleted in the four years since the matter was concluded," and asserting that "NHTSA's retention policy provides no mandatory retention schedule for documents of this nature." Def. Mem. at 9 (emphasis added; citation omitted). The D.C. Circuit

[4] For example, in *Judicial Watch v. U.S. Dep't of Justice*, 806 F. Supp. 2d 74 (D.D.C. 2011), the Court found the agency's search for responsive e-mail to be adequate. It noted that "[t]he search term 'NAACP' was used because it is included in the suffix of the business email addresses of all NAACP-LDF employees, *i.e*, '@NAACPLDF.org,' and therefore would retrieve any emails from or to NAACP-LDF employees." *Id*. at 77 (citation omitted).

has rejected such assertions. In *Valencia-Lucena*, the court of appeals found that "the Coast Guard's contention that summary judgment is appropriate because logbooks such as the one requested by Valencia-Lucena are routinely destroyed after two years is without merit," holding that "generalized claims of destruction or non-preservation cannot sustain summary judgment." 180 F.3d at 328 (citations omitted).

The agency's unsupported speculation concerning the disposition of e-mail generated several years ago ("potential e-mail messages *may have been* deleted") underscores the fact that it has failed to state whether, and to what extent, NHTSA creates and maintains back-up tapes or other archives of employee e-mail.[5] Indeed, the record contains no descriptions of NHTSA record-keeping policies or procedures. The D.C. Circuit considered a similar circumstance in *Ancient Coin Collectors Guild*, where it noted:

> Nowhere does State explain whether it possesses email archives for Bureau employees other than [one] former staff member, whether there are backup tapes containing staff member emails and, if so, whether such backup tapes might contain emails no longer preserved on staff members' computers.

641 F.3d at 514. The court found the agency's description of its records system and search efforts insufficient to establish the adequacy of its search.

> [U]nder the circumstances it is reasonable to expect State to inform the court and plaintiffs whether backup tapes of any potential relevance exist; if so whether their responsive material is reasonably likely to add to that already delivered; and, if these questions are answered affirmatively, whether there is any practical obstacle to searching them.

*Id*. at 515. Likewise, NHTSA's failure to discuss "email archives" or "backup tapes" in this case (coupled with the other noted deficiencies) requires the Court to deny the agency's motion for summary judgment.

---

[5] Mr. Abbott, the only NHTSA employee to describe his search efforts, merely asserts that he searched his "agency-assigned e-mail account (including the . . . Archive folder[])." Abbott Decl., ¶¶ 11, 14. It is unclear what kinds of material the referenced folder would contain, or whether a system-wide back-up system exists and might contain additional material.

### B. **There are Positive Indications of Overlooked, Responsive Material Not Identified by NHTSA**

NHTSA's failure to describe its search efforts with the requisite specificity strongly suggests that the agency's search did not "us[e] methods that are reasonably expected to produce the requested information," *Concepcion*, 767 F. Supp. 2d at 145, and was not "reasonably calculated to uncover all relevant documents." *Nation Magazine*, 71 F.3d at 890. Indeed, as explained below, in this case there are "positive indications of overlooked materials" and summary judgment for the agency is thus inappropriate. *Duenas Iturralde*, 315 F.3d at 314; *see also Valencia-Lucena*, 180 F.3d at 326; *Concepcion*, 767 F. Supp. 2d at 145-146.

SRS challenges the agency's assertion that communications between NHTSA and Evenflo responsive to the FOIA request do not exist. That assertion defies logic and is contradicted by evidence already in the record and additional material SRS submits in support of its opposition and cross-motion.

It is undisputed that NHTSA communicated with representatives of Evenflo concerning the Discovery child restraint seat and its eventual recall. The agency's declarant, Mr. Abbott, explains that after NHTSA discovered defects in the child restraint system, it "*contacted Evenflo* with regard to the performance of the Discovery seat in the [agency's] tests." Abbott Decl., ¶ 6 (emphasis added). Subsequent contacts then ensued:

> In late 2007, representatives from Evenflo met with NHTSA twice to review the NCAP testing, including the performance of the Discovery seats. The review included watching the crash test video. . . . The agency conducted . . . two follow-up tests to evaluate the seat's performance . . . [and] Evenflo observed each of these tests.

*Id.*, ¶ 7. Despite these acknowledged contacts and meetings, the records identified by NHTSA as responsive to the FOIA request include *no* communications between the agency and Evenflo. Declaration of David L. Sobel ("Sobel. Decl.") (filed herewith), ¶ 3. Although the agency has

identified and released a substantial number of e–mail messages, *see* Exhibit H, attached to DiMarsico Decl. (*Vaughn* index describing redacted material), all of those messages are internal to NHTSA. Sobel Decl., ¶ 4.

While several of the internal NHTSA messages reference contacts between NHTSA and Evenflo, no direct documentation of those contacts has been produced. In a November 16, 2007 message, Thomas Cooper of NHTSA reports to John Abbott that "Lindsay is asking for the data from the child seat mounted accelerometers for each test." (This presumably refers to Lindsay Harris, an Evenflo Vice President.) Mr. Abbott forwarded the message to another NHTSA employee and writes, "Evenflo would like to see more accelerometer data (see Tom's message below). Can we make this available to them, and if so, when?" Exhibit A, attached to Sobel Decl. Similarly, in a January 18, 2008 message, John Abbott writes to several NHTSA colleagues that "I just spoke with Randy Kiser (Evenflo) regarding the test. . . . R. Kiser also says he will send a PDF of the instructions to ODI and MGA within the hour. I will forward the instructions when I receive them." Exhibit B, attached to Sobel Decl. No communications to or from Evenflo associated with these transactions have been identified by the agency. It simply strains credulity to conclude that *all* of NHTSA's communications with Evenflo – including the initial notification that the regulatory agency had identified serious defects in one of the manufacturer's products – occurred through informal, oral means.[6]

The agency asserts that SRS's "objections are founded on speculation" and "premised on its belief that documents *should* exist." Def. Mem. at 9 (emphasis in original). To the contrary, SRS can point to "positive indications of overlooked materials." *Duenas Iturralde*, 315 F.3d at 314. In product liability litigation against Evenflo concerning the defects in Discovery child

[6] Indeed, the "accelerometer data" referenced in Exhibit A, and the "PDF of the instructions" referenced in Exhibit B, could not possibly have been exchanged orally between NHTSA and Evenflo.

restraint seats (*Hadjih v. Evenflo Company, Inc.*, Civil Action No. 10-cv-2435-RBJ-KMT (D. Colo.)), the discovery process identified written communications between NHTSA and the company that are clearly responsive to SRS's FOIA request. In a privilege log filed in the *Hadjih* case, Evenflo identified an e-mail message dated December 13, 2007, which is described as "[c]orrespondence regarding NHTSA side-impact test." In its identification of the parties to the communication, Evenflo notes "e-mail chain also involves T. Cooper," referring to Thomas Cooper of NHTSA. Exhibit C (attached to Sobel Decl.) ("Privilege Log of Evenflo Company, Inc. for *In Camera* Review") at 4. The log also includes several references to "[d]raft e-mail to NHTSA regarding recall/retrofit," *id.* at 5, strongly suggesting that a final version of the referenced communication was sent to the agency. In addition to these clear indications of e-mail contacts between NHTSA and the company, a declaration filed in the *Hadjih* case establishes that the Zeno Group, a public relations firm retained by Evenflo, "prepared a communications plan regarding the [Discovery] recall" which "included drafting correspondence to NHTSA." Exhibit D (attached to Sobel Decl.) (Affidavit of Cheryl Pellegrino), ¶ 5.

In light of the clear indications that NHTSA and Evenflo communicated through e-mail and "correspondence" with respect to the defects in the Discovery child seat and its eventual recall, the agency's unsubstantiated assertion that it conducted an adequate search cannot withstand judicial scrutiny. As the D.C. Circuit has long emphasized, the adequacy of an agency's search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). In conducting the requisite analysis, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 177

(D.D.C. 2011) (citation and internal quotation marks omitted). Under the facts of this case, the Court should find that NHTSA's search was not "reasonably calculated to uncover all relevant documents" and was thus inadequate.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment should be denied, and plaintiff's cross-motion for partial summary judgment should be granted.

Respectfully submitted,

***/s/ David L. Sobel***

DAVID L. SOBEL
D.C. Bar No. 360418

1818 N Street, N.W.
Suite 410
Washington, DC 20036
(202) 246-6180
sobel@att.net

Counsel for Plaintiff