**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**SAFETY RESEARCH &**                   )
**STRATEGIES, INC.,**                   )
                                        )
                   **Plaintiff,**       )
                                        )
        **v.**                          )        **Civil Action No. 12-551 (ESH)**
                                        )
**U.S. DEPARTMENT OF**                  )
**TRANSPORTATION**                      )
                                        )
                   **Defendant.**       )
_____)

**MEMORANDUM OPINION**

Plaintiff Safety Research & Strategies, Inc. ("SRS") has sued the U.S. Department of

Transportation, alleging that defendant has violated the Freedom of Information Act, 5 U.S.C.

§ 552 *et seq*. ("FOIA").  (Complaint, Apr. 10, 2012 [ECF No. 1].)  Before the Court is

defendant's Motion for Summary Judgment (July 11, 2012 [ECF No. 6] ("Def.'s Mot.")), and

plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for

Partial Summary Judgment, (Aug. 28, 2012 [ECF No. 10] ("Pl.'s Opp'n")).  For the reasons

stated, the Court will deny defendant's motion and hold plaintiff's motion in abeyance.

**BACKGROUND**

On November 22, 2011, plaintiff sent a FOIA request to the National Highway Traffic

Safety Administration ("NHTSA") of the U.S. Department of Transportation.  (Defendant's

Statement of Material Facts, July 11, 2012 [ECF No. 6] ("Def.'s Facts") ¶ 6.)  Plaintiff sought

"copies of any and all of NHTSA's correspondence, manufacturer responses, additional

correspondence or submissions, including but not limited to electronic indices or attachments

1

involving Recall 08C002000, Evenflo Discovery car seats models 390, 391, 534 and 552, and

associated travel systems." (*Id.*, citing DiMarsico Decl. Ex. A, Nov. 22, 2011 Letter.)  Plaintiff

further requested three specific categories of records:

(1) Copies of laboratory test reports and videos conducted by NHTSA that led to the recall of the Discovery car seats, models 390, 391, 534 and 552;

(2) All correspondence and other documentation, including, but not limited to meeting minutes and agendas, electronic communications from NHTSA to Evenflo concerning those tests and their outcomes; and

(3) Evenflo's chronology "of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with their dates of receipt," associated with Recall 08C002000, as required under Sec 573.1 Defect and noncompliance information report.

(*Id.*)

NHTSA determined that responsive records would be located in the Office of Defects

Investigation ("ODI") and the New Car Assessment Division ("NCAP").  (DiMarsico Decl.

¶ 19.)  Those offices then identified personnel likely to have responsive records.  (*Id.*)  The

potential document custodians were instructed to search their paper files, electronic files, and e-

mail correspondence for documents related to plaintiff's request.  (*Id.*)  Through that process,

NHTSA identified 158 pages, 16 photographs, and 9 videos that were responsive to plaintiff's

request, of which 104 pages were exempt from release under FOIA Exemption 4.  (Def.'s Facts

¶¶ 11-12, citing DiMarsico Decl. ¶¶ 23-24.)  Thus, on January 6, 2012, NHTSA released 54

pages, 16 photographs, and 9 videos to plaintiff.  (*Id.* ¶ 11, citing DiMarsico Decl. ¶¶ 23, 25.)

All of the above documents related to category (1).  (*Id.*)  NHTSA did not identify any

documents responsive to categories (2) or (3).  (*Id.*, citing DiMarsico Decl. ¶ 23.)

On January 12, 2012, plaintiff appealed NHTSA's initial determination.  (*Id.* ¶ 13;

DiMarsico Decl. Ex. E, Jan. 12, 2012 Letter.)  On February 14, 2012, NHTSA's Chief Counsel

notified plaintiff that he had determined that responsive records may exist elsewhere in

NHTSA's files, and remanded plaintiff's FOIA request.  (*Id.* ¶ 14, citing DiMarsico Decl. Ex. F,

Feb. 14, 2012 Letter.)  On February 27, 2012, NHTSA's FOIA Specialist contacted the

previously-identified potential document custodians and requested that they conduct another

search of their records, this time for "internal communications related to '[a]ll correspondence

and other documents, including, but not limited to meeting minutes and agendas, electronic

communications from NHTSA to Evenflo concerning these tests and their outcomes.'"  (*Id.* ¶ 16;

DiMarsico Decl. ¶ 29.)  Agency personnel identified 641 pages and one video that were

responsive to the new request, of which 23 pages were exempt from release under FOIA

Exemptions 4 and 5.  (Def.'s Facts ¶¶ 19-21; DiMarsico Decl. ¶ 31.)

Plaintiff has filed suit, challenging the adequacy of NHTSA's search.

## ANALYSIS

### I.    STANDARD OF REVIEW

The Court may grant a motion for summary judgment if the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a), (c).  The moving party bears the burden of demonstrating an absence of a genuine issue of

material fact in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions

in the moving party's affidavit may be accepted as true unless the opposing party submits his

own affidavits, declarations, or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d

453, 456-57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations

omitted).  "In a FOIA case, summary judgment may be granted to the government if 'the agency

proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).

## II.     ADEQUACY OF SEARCH

Plaintiff does not challenge the agency's withholding of certain material under FOIA Exemptions 4 and 5, but instead, it challenges the adequacy of the agency's search.  (Pl.'s Opp'n at 1.)  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of the search depends on the particular facts of each case. *Id*.  Thus, to meet its burden, the agency must provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). While agency declarations in this regard are afforded a presumption of good faith, *see, e.g.*, *SafeCard Services, Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.  Plaintiff points to several supposed inadequacies in NHTSA's searches, each of which will be addressed *seriatim*.

A.       **Similarity of First and Second Searches**

First, plaintiff asserts that NHTSA has failed to demonstrate that the second search

conducted on remand was different from the first in any material respect.  (Pl.'s Opp'n at 7.)  As

evidence of this fact, plaintiff points to NHTSA's descriptions of the two searches run by one of

the ten document custodians, Mr. John Abbott, which are virtually identical.  (*See id*.)

Additionally, plaintiff points to the declaration of one of the agency's Attorney Advisors, who

stated that to conduct the second search, the agency's FOIA specialist contacted the same

employees "who had previously been identified as likely to have responsive records."  (*Id.* at 8

n.3, citing DiMarsico Decl. ¶ 29.)  Plaintiff argues that because NHTSA's Chief Counsel

acknowledged that there might be additional responsive records beyond those identified in the

first search, the fact that the second search was so similar to the first gives rise to a "reasonable

doubt" as to the adequacy of the agency's efforts.  (*See id.* at 6-8.)

However, in its reply, NHTSA has clarified the situation, for although the two searches

employed the same methodology, they did in fact differ in scope.  (Defendant's Reply to

Plaintiff's Opposition and Opposition to Plaintiff's Partial Cross-Motion for Summary Judgment,

Sept. 14, 2012 [ECF No. 12] ("Def.'s Reply") at 4-5.)  Specifically, in its initial search, NHTSA

erroneously interpreted plaintiff's request as encompassing external communications between

NHTSA and Evenflo, but not internal communications within NHTSA relating to the Evenflo

matter.  (*See id*.)  Before the second search, however, the agency acknowledged that plaintiff's

request included all of NHTSA's internal correspondence relating to the Evenflo matter, and as a

result, it expanded the scope of the remanded search to include those materials.  (*See id.* at 4;

Second DiMarsico Decl. ¶ 14.)  This explanation is bolstered by the results of the second search:

the 641 pages identified therein "consisted mostly of internal communications between NHTSA

employees concerning the Evenflo matter."  (Def.'s Facts ¶ 19.)  In light of this explanation, the

Court does not find that the two searches were so similar as to cast doubt on the adequacy of

NHTSA's search procedures.

     **B.**     **Failure to Provide Search Terms**

     Second, plaintiff argues that NHTSA has not met its burden to demonstrate the adequacy

of its search efforts because it has not provided the search terms that were used by nine of the ten

custodians in identifying responsive documents.  (Pl.'s Opp'n at 8-9.)  With its reply, defendant

submitted two supplemental declarations to address this concern.  First, one of NHTSA's

Attorney Advisors stated that the agency did not use a single set of search terms because they

have no agency-wide document management system in which to run universal search terms.

(*See* Def.'s Reply at 6, citing Second DiMarsico Decl. ¶ 9.)  Instead, the agency identified ten

individuals as potential document custodians and instructed them to search their email, their

network and personal computer drives, and their office and personal paper files for records

relating to plaintiff's request.  (*See id.*, citing Second DiMarsico Decl. ¶¶ 9-11.)  Defendant

claims that instructing employees on specific search terms to use is not necessary when a request

involves a "discrete issue" like a particular recall, as was the case here.  (*See id.*, citing Second

DiMarsico Decl. ¶ 10.)  To support that claim, NHTSA also submitted a supplemental

declaration from John Abbott, one of the ten potential document custodians.  Mr. Abbott

explained that he manually searched all of his files for any folders or documents containing the

words "Evenflo," "Discovery," and "NCAP," as well as "more generic names."  (*Id.* at 6-7,

citing Second Abbott Decl. ¶ 8.)

     In its reply, Plaintiff argues that those declarations are insufficient to satisfy defendant's

burden, because although they explain how Mr. Abbott conducted his search, they do not

describe the search terms used by the other nine potential document custodians.   (*See* Plaintiff's

Reply, Oct. 5, 2012 [ECF No. 17] ("Pl.'s Reply") at 2-4.)  The Court agrees.

It is well-established that "[a] reasonably detailed affidavit, setting forth the *search terms*

and the type of search performed . . . is necessary to afford a FOIA requester an opportunity to

challenge the adequacy of the search and to allow the district court to determine if the search was

adequate in order to grant summary judgment."  *Oglesby*, 920 F.2d at 68 (emphasis added).

The search conducted by Mr. Abbott—which used several terms specifically related to

plaintiff's request and which consisted of his paper files, email account, network storage drives,

and laptop storage drive—was sufficiently described in his affidavit to allow the Court to

determine that it was "reasonably calculated to uncover all relevant documents." *Weisberg*, 745

F.2d at 1485.  However, NHTSA has provided no information about the search terms used by the

other nine potential document custodians.  Without such information, the Court has no basis on

which to find that the search was adequate.  Indeed, in *Judicial Watch v. U.S. Dep't of Homeland

Sec.*, 857 F. Supp. 2d 129 (D.D.C. 2012), this Court denied summary judgment because the

agency had only provided adequate descriptions of the searches conducted by some offices

within the agency, but not all.  *Id.* at 140-41.  The descriptions of the searches conducted by

several of the offices within the agency failed to include certain necessary pieces of information,

such as "who conducted the search, how it was conducted, or what search terms the office used."

*Id.* at 140.  NHTSA's descriptions of the searches conducted by nine of the ten potential

document custodians in this case are equally infirm.

The Court is aware of no caselaw—and, not surprisingly, defendant has pointed to

none—suggesting that search terms are unnecessary where the agency does not have a central

searchable database.  The need to disclose the search terms used to identify responsive

documents may be equally—if not more—important where the agency lacks a centralized database and the searches were therefore done by individual document custodians.

Similarly, defendant offers no support for its position that FOIA requests on "discrete" topics obviate the need to provide search terms. To the contrary, it is not enough for the agency to simply claim that the search terms were "evident from the request." What is obvious to one person may not be obvious to another. NHTSA failed to provide enough information from which the Court could conclude that the document custodians (excluding Mr. Abbott) conducted thorough and reasonable searches. With such a "discrete" topic, it would presumably have been very easy for the agency to have provided the document custodians with a list of appropriate search terms. In the absence of such a standardized search protocol, however, the agency must explain how each document custodian conducted the search of his or her own files.

## C.   Failure to Search Back-Up Tapes and Hard Drives

Third, plaintiff initially complained of NHTSA's failure to "state whether, and to what extent, NHTSA creates and maintains back-up tapes or other archives of employee e-mail." (Pl.'s Opp'n at 10.) In response, defendant offered an affidavit from Tim Schmidt, the Deputy Chief Information Officer for the U.S. Department of Transportation. Mr. Schmidt provided a detailed description of NHTSA's system of network servers and back-up drives. He explained that back-up hard drives and e-mail archives were not searched because they either do not exist or do not contain data in a searchable format. (*See* Def.'s Reply at 8, citing Schmidt Decl.) Thus, it would have been unduly difficult to search those hard drives with a low likelihood of finding any additional responsive documents. (*Id.* at 9, citing Schmidt Decl.)

In its reply, plaintiff does not challenge those assertions. Instead, plaintiff notes that none of defendant's objections to searching its archived materials applies to the network drive

locations assigned to each user.  Specifically, plaintiff points to Mr. Schmidt's explanation that individual users can choose to store emails on their personal network drives, and does not claim that it would be "difficult and time consuming" to retrieve information from those drives.  (Pl.'s Reply at 5.)  Plaintiff acknowledges that Mr. Abbott did, in fact, search his personal network storage drive, but complains that NHTSA has not demonstrated that the other nine custodians did the same.  (*Id.*)

As an initial matter, the Court cannot conclude that NHTSA was required to search all back-up tapes and archived materials in order to satisfy its search obligations.  All that this Circuit has required is that an agency explain "whether backup tapes of any potential relevance exist," and if so, "whether there is any practical obstacle to searching them."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 515 (D.C. Cir. 2011).  Here, the Court finds that Mr. Schmidt's declaration sufficiently demonstrates that it would have been "impossible, impractical, or futile," *id.* at 514, to search the Exchange Server or the back-up hard drives because those files were "not organized for retrieval of individual documents or files, but rather for purposes of disaster recovery."  *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1243-44 (10th Cir. 2009) (cited in *Ancient Coin Collectors*, 641 F.3d at 514).  Thus, NHTSA was not required to search those files for any documents responsive to plaintiff's FOIA request.

Moreover, with respect to the individual users' personal network drives, plaintiff's allegations lack merit.  Defendant has submitted a supplemental declaration with its reply explaining that, in response to plaintiff's FOIA request, the NHTSA FOIA Specialist instructed the potential document custodians to search "their email (including the Inbox, Sent Items, Drafts, Deleted Items, and Archive subfolders), their *network and personal computer drives*, and office and personal paper files for all responsive documents."  (Second DiMarsico Decl. ¶ 9 (emphasis

added).)  Thus, plaintiff incorrectly asserts that NHTSA has "failed to show" that "the network

storage drives assigned to the other nine record 'custodians' have been similarly examined."

(Pl.'s Reply at 5.)  Given plaintiff's inaccurate premise, the Court cannot invalidate the search on

this basis.

### D.      Positive Indications of Overlooked Material

Finally, plaintiff suggests that summary judgment for defendant is inappropriate in light

of several "positive indications of overlooked materials."  (Pl.'s Opp'n at 11.)  Specifically,

plaintiff points to several indicators that external communications between NHTSA and Evenflo

did, in fact, take place.  From this, plaintiff argues that defendant's search must not have been

reasonably calculated to uncover all relevant documents.

Plaintiff first points to admissions of defendant's declarants that NHTSA "contacted" and

"met with" representatives from Evenflo on several occasions.  (*Id.*)  Next, plaintiff identifies

internal NHTSA communications that reference potential future communications with Evenflo.

(*See id.* at 12.)  For example, one e-mail says that "Evenflo would like to see more accelerometer

tests," and asked whether NHTSA could make that information available to them.  (*Id.*)  And in

another email, a NHTSA employee reported that an Evenflo employee had promised to send a

PDF file of some instructions "within the hour."  (*Id.*)  Finally, plaintiff points to several entries

from a privilege log in a private products liability lawsuit against Evenflo as proof of

communications between Evenflo and NHTSA.  (*Id.* at 12-13.)  For example, one entry was

listed as "[c]orrespondence regarding NHTSA side-impact test," and noted that the email chain

included "T. Cooper"—or Thomas Cooper of NHTSA—as a recipient.  (*Id.* at 13, citing Ex. C at

4.)  Other entries referred to "[d]raft email[s] to NHTSA regarding recall/retrofit."  (*Id.*, citing

Ex. C at 5.)  Plaintiff asserts that these facts are "clear indications that NHTSA and Evenflo

communicated" with respect to the Discovery child seat recall, and thus NHTSA's failure to identify *any* external communications could only have resulted from inadequate search procedures.  (*Id.*)  Under the particular circumstances of this case, the Court agrees.

As an initial matter, not all of plaintiff's "clear indications" of communications between NHTSA and Evenflo are in fact so clear.  For example, the e-mails regarding accelerometer tests and PDF instructions do not conclusively establish that such communications took place; they simply revealed an intent to engage in future communications.  There is no evidence that NHTSA ever actually sent accelerometer tests to Evenflo or that Evenflo ever actually sent PDF instructions to NHTSA.  Similarly, several of the privilege log entries relate to "draft" e-mails which may or may not ever have been sent to NHTSA.  Regardless, NHTSA does not dispute that external communications between NHTSA and Evenflo did in fact take place, and so plaintiff need not rely on these speculative "indications."

Standing alone, the mere fact that external communications were not uncovered in NHTSA's searches is insufficient to defeat summary judgment for defendant; the adequacy of a FOIA search is determined "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  However, as established above, the Court cannot state with confidence that the "methods used to carry out the search" were in fact "appropriate" based on the declarations provided by the agency.  Thus, when combined with NHTSA's failure to provide the search terms used by nine of the ten potential document custodians, the Court finds that the unlikely absence of *any* external communications between NHTSA and Evenflo supports summary judgment for plaintiff.  *See Friends of Blackwater v. U.S. Dep't of Interior*, 391 F. Supp. 2d 115, 120 (D.D.C. 2005) (noting that although lack of search terms alone "might not be

enough to invalidate an otherwise adequate affidavit, other evidence calls into question the adequacy of the search").[1]

## CONCLUSION

Having considered the pleadings and the entire record herein, the Court denies defendant's motion without prejudice, and holds plaintiff's motion in abeyance. By December 10, 2012, NHTSA shall conduct an adequate search of its files and produce all responsive documents, or in the alternative, it may submit an affidavit demonstrating that its initial search was adequate. Any opposition shall be filed on or before December 21, 2012 by plaintiff, and any reply shall be filed by January 3, 2013.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: November 8, 2012

---

[1] The Court is unable to determine whether the agency took reasonable steps to identify e-mails sent to Thomas Cooper or any other former employees because NHTSA has not provided the names of the other nine document custodians who were asked to search their files.